**In re Louie MARQUEZ, Jr., on Habeas Corpus.**

**No. 84–0694–B(M).**

United States District Court, S.D. California.

Aug. 6, 1986.

Louie Marquez, Jr., in pro per.

Rudolf Corona, Jr., Deputy Atty. Gen., San Diego, Cal., for respondent.

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

BREWSTER, District Judge.

**I. BACKGROUND**

On April 9, 1981, in the Superior Court of Imperial County, petitioner, Louie Mar-

quez, Jr., was convicted by a jury of second degree murder and assault by means of force likely to produce great bodily injury. Marquez was tried with two co-defendants. Co-defendant, Antonia Mesa Sanchez, was also convicted of second degree murder. The charges against the third defendant, Manuel Cruz Silvas, were dismissed after closing arguments and prior to submission of the case to the jury, under circumstances to be discussed below. Marquez was sentenced to prison for a term of fifteen years to life for the murder and a concurrent term of four years on the assault charge.

Marquez appealed his conviction to the California Court of Appeal, Fourth Appellate District. A three-judge panel of that court denied his appeal and an appeal by Sanchez in a fourteen-page unpublished opinion dated September 13, 1982. The California Supreme Court denied his petition for rehearing on December 1, 1982.

On this petition for a writ of habeas corpus, Marquez contends that his conviction for second degree murder was unconstitutional in two respects: (1) there was insufficient evidence to support the conviction, and (2) the prosecutor made improper remarks to the jury that prejudiced Marquez.

## II. DISCUSSION

### A. *Sufficiency of the Evidence*

■ Marquez contends that there was not sufficient evidence for the jury to conclude that the prosecution had proven second degree murder beyond a reasonable doubt.[1]

In *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court held that a federal habeas corpus court reviewing the sufficiency of evidence to support a state court conviction must consider whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt". *Id.* at

319, 99 S.Ct. at 2789 (emphasis in original). The Court emphasized that the Court should not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. *Id.* at 318–19, 99 S.Ct. at 2788–89.

The Court has thoroughly reviewed the trial transcript. After viewing the evidence in the light most favorable to the prosecution, the Court concludes that a rational juror could find, beyond a reasonable doubt, that the following events occurred.

On October 18, 1980, Sanchez and Marquez, who were friends, were among many people drinking at the El Segundo bar in Brawley, California. Also at the bar were the victim, Jesse Soto, and his girlfriend, Susie Holguin. Shortly before 12:30 a.m. on October 19, 1980, Soto and Holguin became engaged in an argument outside the El Segundo. Soto punched Holguin in the nose, causing her nose to bleed. Sanchez intervened, and Holguin fled, running toward the Victory Market located a block away. Soto then struck Sanchez in the face with a beer bottle. Bleeding from the face, Sanchez re-entered the El Segundo, where Marquez had remained. In the interim, Soto followed after Holguin in the direction of the Victory Market.

Isable Montemayor, who had previously lived with Sanchez and who had borne a child by him, testified that she then saw Sanchez and Marquez together in front of the El Segundo. Montemayor then saw Marquez run in the direction of the Victory Market, followed by Sanchez.

Paula and Hector Santillan were working at the Victory Market that night and were present when Susie Holguin entered, bleeding from the nose. Soon thereafter, Soto opened the door of the store and attempted to convince Susie to come away with him. She refused and Soto left.

Shortly thereafter, through the store's front windows, Hector Santillan saw three or four Mexican males running past. One of the men had blood on his face. Mr. Santillan saw him pull a large knife from

---

1. Petitioner does not challenge his conviction    on the assault charge.

his waistband. The man gripped the knife as one would hold a sword.

At about 12:30 a.m., several Brawley police officers received a call regarding a knife fight occurring in the vicinity of North Ninth Street near Victory Market. Officer Johnson arrived on the scene promptly. He saw five or six males fighting in the street. As he approached, most of the men fled but two remained. Jesse Soto was on the ground and another man stood over him kicking him. Johnson approached the upright man from the rear and saw him deliver four or five very hard kicks to Soto's upper body. When Johnson got close, the man doing the kicking turned and faced Johnson, and Johnson saw that the man was Marquez. Marquez fled but was apprehended by other officers on the scene.

Soto was bleeding badly from stab wounds to his abdomen and had several cuts and abrasions to his face. The officers found, under a parked car in the vicinity, a steak knife with a serrated edge. There was blood on the handle, and a fingerprint was visible. The knife was preserved as evidence.

Holguin was then escorted out of the Victory Market by a police officer. She approached Soto and asked him who did this to him. Soto responded that "Pelon was one of them". "Pelon" was the nickname of Marquez. Soto also said that he was going to get even with Pelon.

Soto was brought to a hospital where, after extensive surgery, he died from massive internal bleeding caused by stab wounds.

Marquez' clothing was seized as evidence. Soto's blood type was determined to be "A", Marquez' blood type was "O", and Sanchez' blood type was "B". Marquez' clothing had type A blood on it—Soto's blood—and type B blood on it—Sanchez' blood. Type B blood (Sanchez') was found on the handle of the knife found at the murder scene. Sanchez' thumbprint was found on the blade of the knife.

The Court concludes that the evidence at the trial was at least sufficient to convict Marquez of second degree murder on an aiding and abetting theory.[2] With respect to aiding and abetting, the trial court instructed the jury that:

A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime and while having the intent to facilitate the commission of the crime, he aids, promotes, encourages, or instigates by act or advice the commission of such crime.[3]

A rational juror could conclude from the above-recited facts that the elements of aider and abettor liability were established beyond a reasonable doubt.

The evidence supported a conclusion that Sanchez was the one who stabbed Soto, since his fingerprint was found on the blade and since a man with blood on his face was seen running past the Victory Market, pulling a knife from his waistband and gripping it like a sword. Marquez clearly aided, promoted, encouraged, or instigated the stabbing of Soto by Sanchez through his involvement in the brawl. Even after the rest of the assailants had dispersed, Marquez continued to deliver four or five hard kicks to Soto's upper body. Moreover, Soto identified Marquez as one of his attackers. Marquez' participation in the brawl and his brutal kicks to Soto's body also evince an intent to facilitate the commission of the crime of second degree murder. Finally, the jury could reasonably infer that Marquez had knowledge of Sanchez' unlawful purpose from: (1) the evidence that Marquez ran with Sanchez toward Soto while Sanchez was holding the knife like a sword, (2) Marquez' participation in the brawl resulting in Sanchez'

---

**2.** It is, therefore, unnecessary for the Court to determine whether the jury could reasonably have convicted Marquez on a theory other than aiding and abetting.

**3.** Tr. at 1054. The petitioner does not contest the lawfulness of the aiding and abetting instruction here, nor does the record reflect such a challenge at any point in the state court proceedings.

blood getting on Marquez' clothes, and (3) Marquez' continuation of the attack on Soto even after the others had fled.

B. *Prosecutor's remarks to the jury*

■ In the closing argument, the prosecutor took the unusual action of urging the jury to acquit Marquez' codefendant, Silvas. The prosecutor told the jury:

[T]he people in this case have not proven beyond a reasonable doubt all of the elements that need to be proven against him for the crime of murder, for the crime of assault with a deadly weapon, for the crime of the lesser included offenses of voluntary and involuntary manslaughter, for the lesser included offense of assault. We have not proven, and we have not met our burden of proof in that respect.

. . . .

Even though there is substantial evidence in this case to show that he was involved in this thing, that he actually was there when it happened, and most probably did what he is charged with, we haven't proven it to you beyond a reasonable doubt.

So what do you have to do with Mr. Silva? [sic] You have to go into that jury room, you have to come back out here, and you have to tell Mr. Silva [sic]: 'Mr. Silva [sic], we find you not guilty of murder and all of its lesser included offenses. And we find you not guilty of assault with a deadly weapon and its included offense—assault. Because the People have not met their burden of proof.'

Trial transcript at 1020. The prosecutor then stated:

What about Mr. Marquez? And Mr. Sanchez? I think you can evaluate all the evidence that you have heard and all the testimony and almost all of it related to those two defendants, tending to show circumstantially that they did what they were charged with, that they were in-

volved in this stabbing, that they conferred with each other before they ran after Mr. Soto. That they were acting in concert together with this other group of persons around Mr. Soto in beating and knifing him to death and kicking him to death.

*Id.* at 1021. After the closing argument, the charges against Silvas were dismissed pursuant to Silvas' motion for a judgment of acquittal.

■ The petitioner contends that the prosecutor's remarks constituted prejudicial misconduct in that they injected the prosecutor's personal opinions as to the guilt or innocence of the defendants. This argument is without merit for substantially the same reasons stated by the California Court of Appeal.[4] The prosecutor never expressed a personal opinion as to the guilt of the defendants; instead he argued that the evidence against Marquez and Sanchez was sufficient to meet the government's burden. While the Court believes that better practice would have been for the prosecutor to stipulate to a judgment of acquittal for Silvas out of the presence of the jury, his remarks cannot be characterized as error of a constitutional dimension. Even if the prosecutor's conduct is considered constitutional error, the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966). The evidence reviewed above convinces the Court that Marquez would have been convicted, at least on an aider and abettor theory, even if the prosecutor had not made the challenged remarks.

## ORDER

Based on for the foregoing, IT IS HEREBY ORDERED THAT:

The petition for a writ of habeas corpus is DENIED.

---

**4.** The Court, however, disagrees with the Court of Appeal's finding that Marquez did not timely object to the prosecutor's remarks. The trial transcript shows that Marquez' attorney proffered a motion for mistrial based on the prosecutor's remarks immediately after the arguments were concluded and the jury was excused and prior to instruction of the jury. Tr. at 1035.